## BAINBRIDGE FARM COMPANY *et al. v.* BALL & REYNOLDS *et al.*

1. Under the allegations of their petition the plaintiffs are not entitled to the equitable relief sought by them. In general, if a demurrer would hold to a bill, the court, though the defendants answer without demurring, will not grant relief.

2. Where plaintiffs as lessees file their petition to enjoin the defendants as lessors of turpentine lands, and the defendants by way of cross-action seek to recover from the plaintiffs the value of trees on the lands which the defendants allege the plaintiffs have wrongfully cupped and are wrongfully working for turpentine purposes, the defendants are not entitled to recover the value of such trees and at the same time enjoin the plaintiffs from working the same for turpentine purposes. It would be lawful for the defendants to recover from the plaintiffs any damages which accrued up to the time of the institution of their cross-action, growing out of the unlawful cupping and working of trees for turpentine under their lease, and to enjoin the plaintiffs from further trespasses; but the defendants can not recover from the plaintiffs the full value of the trees so cupped and worked, and at the same time enjoin them from working such trees for turpentine purposes.

3. Under the circumstances the court erred in granting the injunction prayed by the plaintiffs, but did not err in refusing the injunction sought by the defendants.

No. 6168. JANUARY 12, 1928. REHEARING DENIED FEBRUARY 20, 1928.

---

Equity, 21 C. J. p. 430, n. 70.
Injunctions, 32 C. J. p. 386, n. 75, 76.

Injunction.    Before Judge Custer.    Decatur superior court.
July 4, 1927.

Ball & Reynolds filed their petition against the Bainbridge Farm
Company, Byron B. Bower, and Gordon Bower, and made the fol-
lowing allegations:    On December 6, 1924, the Bainbridge Farm
Company leased to petitioners, for the consideration of $20,000,
for a period of five years from January 1, 1925, for turpentine
cup purposes only, all of the long-leaf yellow pine timber which
then measured eight inches in diameter and over, eighteen inches
above the ground, on land lots 150, 148, 147, 146, 135, 175, 174,
173, 172, 190, 189, 187, the south part of 211, the north part of
212, the east part of 186, a part of 185, and a part of 171, in the
20th district of Decatur county.    Petitioners took possession of said
lots and began cupping said timber.    Petitioners "under said
lease" have the usual rights of ingress and egress, to build stills
and houses and other turpentine fixtures, for the purpose only of
cupping and using said timber for turpentine purposes only dur-
ing the term of this lease.    "The grant of rights of ingress and
egress, possession and occupation, to build on said premises stills,
houses and other turpentine fixtures and other rights, are not ex-
clusive to" petitioners, "but in common with and reserved to the"
defendants, "where not inconsistent and when not in conflict with
the rights of" petitioners "in the full enjoyment of the terms of
this lease."    The lease contains this reservation:    "The fenced
fields and the timber and houses and other improvements therein
on lots 190, 211, 212, 135 and 146 are not leased, but are
specially reserved to the" defendants; "the timber in the fenced
field on lot of land No. 150 is herein leased; but the fields, houses,
barns and other improvements are specially reserved by" defend-
ant.    Soon after petitioners entered into the enjoyment of their
leasehold rights and privileges, the officers and agents of the de-
fendants began to track petitioners in their work, measuring said
timber and raising complaints as to the size of the timber cupped
and the location thereof.    The president of the defendant sent his
agents upon said place, counting trees, measuring land, and going
through these and other annoying demonstrations of its intent to
bother, harass, meddle, and interfere with petitioner's enjoyment
of said rights and privileges.    Said president contends that peti-
tioners have cupped timber within the fenced field on lot of land

190.   There is a field containing some thirty acres of cleared land and ten or fifteen acres of woodland about the center of said lot. This field is enclosed by a three-strand barbed-wire fence, running from the east original land-lot line along the south side of said field, almost to the west original land-lot line, where said fence swings to the north to the Bower Station road.   South of this field is considerable timber lying in the open woods or pasture, and there is no other fenced field or enclosure upon said lot, but said woodland or pasture is enclosed by a fence which bounds it on the south some 225 yards south of the south original land-lot line, which is land lot 189.   Said lease does not except said woodland south of said fenced field in lot 190, and petitioners have the right under the lease to cup said timber.   The defendant's president is contending that petitioners have no right to cup said timber, and is demanding that petitioners pay him $1200 for cupping the same, is threatening to sue petitioners for cupping said timber, and also to bring another suit for the alleged injuries hereinafter set out. Said president sends word to and writes petitioner Reynolds every few days, and calls on him to come in and adjust the complaint of the defendants, much to his bother, worry, and harassment. Said complaint is groundless and without cause, and is made for the purpose of worrying, harassing, and fretting petitioners.   In cupping the timber embraced in their lease petitioners inadvertently cupped some two or three hundred trees which ran to a size less than eight inches in diameter eighteen inches above the ground.   The cupping of these trees was worth to petitioner about ten cents per cup, and could not have damaged and did not in fact damage the trees belonging to the defendants in a greater amount. The defendant and Byron B. Bower, its president, and Gordon G. Bower, its secretary and treasurer, and other agents have been going into the woods with measuring instruments, calipers, rules, and tape measures, examining the trees and threatening petitioners' servants and agents, with a stealthy approach and measurement of said trees.   They have complained to petitioners that some five or six thousand undersized trees have been cupped, which complaint is without foundation.   They have been demanding large damages, and threatening to send out large squads of experts, civil engineers, and other persons for the purpose of measuring such trees and appraising the damage thereon, and have

not only thereby interfered with petitioners' leasehold rights and privileges, but contend that they would charge petitioners with the expense of such elaborate measurement and appraisement. These acts and the conduct of the defendants have caused petitioners untold embarrassment, worry, bother, and harassment. Byron B. Bower has threatened to bring a separate and distinct suit for the collection of damages to such trees as have been cupped which are undersize, and all this for the purpose of putting petitioners to the unnecessary expense of attorney's fees, costs, and time spent in court. Petitioners are anxious to put a stop to the interference of defendants, and to have adjudged the complaint brought by said company and its officers and agents. They recognize that they have injured and damaged the defendant by cupping three hundred undersized pine trees, as before set out, but they desire that the same be settled speedily by a court of proper jurisdiction, and that they be not subjected to the annoying conduct of the defendants and their agents. In addition to said 300 trees, petitioners' employees inadvertently cupped some seventy trees within the fenced field, which were of the value of fifty cents each. Defendants have not yet discovered, or at least have not complained of the cupping of this timber, but petitioners stand ready to reimburse them for any loss thereby sustained. To that end petitioners here and now pay into court the sum of $100, which will amply cover all losses and damage sustained by defendants. Should said sum not be sufficient, they stand ready and willing to pay such sums as are required by the court. There is likely to be a multiplicity of suits. Petitioners' leasehold interest, rights, and privileges are being molested and interfered with by the defendants. Petitioners pray that the difference outstanding between them and the defendants be adjudged and settled in this suit, that the defendant company and its president and treasurer be enjoined from further molesting or interfering with them in the enjoyment of their leasehold rights and privileges, and from bringing the threatened suits, and from sending word to, dickering with, or attempting to confer with petitioners about their groundless complaints and claims.

In their answer the defendants set up that petitioners have cupped a much larger number than seventy trees upon the lands excepted from said lease. They have cupped 1040 trees within the

enclosed field, of the value of $520, for which defendants ask judgment. They allege that a measurement and check of twenty acres of about the average character of timber on the entire tract leased to petitioners shows that there are cupped and now being worked and used by plaintiffs 155 undersized trees on said twenty acres; that there are included in the whole lease 3,400 acres or more of woodland; and that according to the acreage checked and measured, the same being representative of the whole tract, there would be and are cupped and now being chipped and used by petitioners 26,350 trees on said tract which are not included in their lease, and to which they have no right or title, and which are worth the sum of twenty cents each, or a total of $5270, for which defendants ask judgment, with interest. Plaintiffs are working, using, and enjoying the benefits, proceeds, and revenues from timber which belongs to the defendants, to which they have no lease, right, or title, and which is located within inclosures excepted in the lease, and is smaller than eight inches in diameter eighteen inches from the ground. Defendants pray that petitioners be enjoined from using, working, chipping, and otherwise enjoying said timber.

Both sides introduced evidence tending to establish their allegations. The judge dissolved a previous restraining order, temporarily enjoined the plaintiffs from further working the seventy trees within the fenced field on lot 212, and enjoined the defendants from bringing any further suits growing out of this cause, pending this suit. To this judgment the defendants excepted on the grounds shown by the opinion.

*G. G. Bower* and *A. B. Conger,* for plaintiffs in error.

*Vance Custer Jr.,* contra.

HINES, J. (After stating the foregoing facts.)

1. The petition does not make a case for the relief sought by petitioners against the defendants. Under their lease the petitioners could cup for turpentine purposes only trees measuring eight inches and over, eighteen inches from the ground; and they had no right to cup trees of less size, or trees which were reserved by the defendants under this lease. Petitioners admit that they had been doing both of these things. In these circumstances the officers of the defendant company had the right to count the trees and measure the lands for the purpose of ascertaining the extent of these tres-

passes and the amount of the damages which the company had sustained in consequence thereof, and to write to petitioners and call upon them to adjust these damages. These officers had the right to examine the trees on the defendant's lands to ascertain whether petitioners were cupping trees which they did not have the right to cup for turpentine purposes under their lease. These facts did not constitute any undue interference with petitioners' rights under the lease. The fact that these acts of the defendant's officers frightened the servants and agents of petitioners did not give to petitioners any right of action against the defendant and its officers. This only shows that these servants and agents were too easily frightened, and makes at best a case of damnum absque injuria. These officers had the right to go into the woods of their company, examine the trees which the plaintiffs were working, with measuring instruments, calipers, and tape measures, and to examine these trees for the purposes aforesaid; and they could stealthily approach and measure these trees, although these acts frightened the servants and agents of petitioners. This conduct and these acts of the officers do not give to the plaintiffs a cause of action against the defendants. This fright of the servants and agents of the petitioners was due to their undue sensitiveness, and was not well founded. Besides, it is not alleged that this conduct of the company's officers had the effect of driving them from the service of their masters. The demand of the officers of the defendant company for excessive damages for these trespasses committed by the petitioners does not give to petitioners any cause of action against the defendants. At most this fact would only furnish to the plaintiffs a defense pro tanto against any actions which this company might institute against them for excessive damages for these trespasses. The threat of the defendants to bring two suits against the plaintiffs, one for the recovery of damages for cupping undersized trees, and the other for working trees which are excepted from the operation of their lease, does not entitle the plaintiffs to injunctive relief upon the theory that it will prevent a multiplicity of suits. Plaintiffs would have a right at law to consolidate the two cases and thus make them one. Civil Code (1910), § 5520.

The allegations that the petitioners are anxious to have the controversy between themselves and the defendants over these tres-

passes settled by the judgment of the court, that they pay into court an amount which will amply cover such damages, and that they are ready and willing, if such amount be not sufficient, to pay such sums as may be required by the court, do not give the plaintiffs a standing in a court of equity. All they will have to do is to let the defendants bring actions against them for such trespass, and set up any defenses which they may have thereto. Thus they have an ample remedy at law, and for this reason a resort to a court of equity is unnecessary. *Conwell* v. *Neal,* 115 *Ga.* 421 (41 S. E. 629). It follows that the petition does not make a case for equitable relief, and was subject to demurrer if a demurrer had been filed. The failure of the defendants to demur will not justify the court in granting to petitioners equitable relief, if they were not entitled thereto under their allegations. In general, if a demurrer would hold to a bill, the court, though the defendant answers without demurring, will not grant relief. *Bond* v. *Little,* 10 *Ga.* 395; *Brown* v. *Redwyne,* 16 *Ga.* 67. So we are of the opinion that the court erred in granting the interlocutory injunction sought by petitioners.

2. The defendants sought to have the plaintiffs enjoined from cupping trees measuring less than eight inches in diameter, eighteen inches from the ground; and from cupping trees, although above that size, which are excepted under the lease to the plaintiffs. As the plaintiffs admit in their petition that they are cupping for turpentine purposes both trees undersized and trees excepted from the operation of their lease, and only deny that they have cupped and are cupping as many of both classes of these trees as the defendants claim, and as the working of these trees for such purpose is a destructive and continuing trespass, the defendants would be entitled to the injunction prayed by them (*Camp* v. *Dixon,* 112 *Ga.* 872, 38 S. E. 71, 52 L. R. A. 755; *Moore* v. *Daugherty,* 146 *Ga.* 176, 91 S. E. 14), unless such injunction should be denied for some other reason. The defendants allege that the plaintiffs have cupped 1040 trees within the enclosed fields, of the value of $520, and that the plaintiffs have cupped and are now chipping and using 26,350 undersized trees on the leased land, of the value of $5,270, for which sums they ask judgment. Defendants then pray that the plaintiffs be enjoined from using, working, chipping, and otherwise enjoying said

timber.  It is well settled that the defendants can not recover the value of the trees which the plaintiffs have cupped and are working, and at the same time enjoin them from working these trees. Under the system of pleading prevailing in this State, the defendants could maintain their cross-action against the plaintiffs to recover such damages as may have accrued to them from the alleged trespasses committed upon the lands up to the bringing of the action, and to restrain the plaintiffs from further trespassing; but where the trespasses complained of consist in the wrongful cupping and working of pine trees for turpentine purposes, and the defendants in their cross-action seek to recover from the plaintiffs the full value of such trees, the defendants can not maintain an action to recover of such full damages, and at the same time to enjoin the plaintiffs from using the trees for the value of which they sue.  *Swanson* v. *Kirby,* 98 *Ga.* 586 (26 S. E. 71) ; *Spencer* v. *Tumlin,* 155 *Ga.* 341, 343 (116 S. E. 600).  The defendants can not recover the full value of these trees, and at the same time enjoin the plaintiffs from using them.  They could have brought an action against the plaintiffs to recover the damages which had accrued to them up to the institution of the action, and could have enjoined the plaintiffs from the further wrongful cupping and working of these trees.  This they do not attempt to do in their cross-action; but they seek to recover from the plaintiffs the full value of the trees which they are cupping and working, and at the same time to enjoin the plaintiffs from using them.  This they can not do.  In this situation the trial judge did not err in refusing to grant to the defendants an injunction restraining the plaintiffs from cupping and working the trees, where they had begun to do so before the institution by the defendants of their cross-action.  If the plaintiffs should undertake to cup other trees which fall below the size specified in the lease, or to cup and work other trees which are excepted under the lease from its operation, and which had not been cupped and worked at the time the defendants instituted their cross-action, they can, by appropriate proceeding in this suit, enjoin the plaintiffs.

*Judgment reversed in part, and affirmed in part.  All the Justices concur.*

### ON MOTION FOR REHEARING.

Hines, J.  The plaintiffs in error made a motion for rehearing,

on the ground that we overlooked a material fact and a material issue of law involved in the case. The issue of law is that the court below ruled that the timber on lot 190, and embraced in the enclosure fenced with woven wire, was not excluded from the lease, and that to this ruling the plaintiffs in error excepted. We did not overlook the fact that counsel for the plaintiffs in error made this contention in their briefs; but we were of the opinion that the bill of exceptions did not properly allege that the court made this ruling, and did not assign error thereon. The bill of exceptions did not allege that the court made this ruling, and did not plainly and distinctly assign any error thereon, if the court had so ruled. This court will not consider assignments of error which do not plainly and distinctly state the rulings to which a party excepts and do not plainly and distinctly assign errors thereon. In the present case the trial judge, after hearing the evidence and argument upon the application of the plaintiffs for injunction, and upon the application of the defendants in their answer for injunction against the plaintiffs, passed an order revoking the temporary restraining order previously granted against the defendants, restrained the plaintiffs from further working the seventy trees within the fenced field on lot 212, and restrained the defendants from bringing any further suits growing out of the pending cause. To this judgment as a whole the plaintiffs excepted on the grounds, (1) that it was contrary to law, and not warranted by the facts; and (2) that the court refused to restrain the plaintiffs from working the timber upon the lots embraced in the lease of less size than eight inches, eighteen inches from the ground. They excepted specially upon the grounds, that (1) "the court refused to enjoin plaintiffs from working, cupping, and using the timber in the enclosure on lot 190," and (2) that the order of the court restrained "defendants from bringing any further suit growing out of this cause pending this suit." It will thus be seen that the plaintiffs in error did not allege that the court construed this lease as not excepting the timber embraced in this enclosure on lot 190, and did not plainly and distinctly assign error on such ruling. In their briefs counsel for the plaintiffs in error contend that as the judge enjoined the plaintiffs from further working the seventy trees on lot 212, and did not enjoin them from working the timber in the enclosure on lot 190, the inference is that he held

that the timber within the enclosure on lot 190 was not excepted from the operation of the lease. As the bill of exceptions does not allege such ruling by the court, and does not assign error on any such ruling, but simply assigns error upon the failure of the court to restrain the plaintiffs from cutting timber within the enclosure on lot 190, we are of the opinion that the bill of exceptions does not plainly and distinctly state that the court made this ruling, and does not plainly and distinctly assign error on such ruling; and while we are of the opinion that under the lease and the evidence the timber within this enclosure was excepted from the lease, we do not think that the assignment of error in the bill of exceptions raised the issue contended for by counsel for the plaintiffs in error in their briefs. For this reason we did not consider this contention in the opinion rendered in this case; and we overrule the motion for rehearing.