## BRINKLEY *v.* BELL *et al.*

1. In the trial of an action for the recovery of land, whether brought in common-law form or under the code, whenever it appears either from the pleadings or the evidence that the parties claim under a common grantor, it is not incumbent upon the plaintiff to show title in such person.

2. When in the trial of such an action the evidence shows that the plaintiffs claim under a deed in which a life-estate is created in their father, with remainder to them, that the defendant claims under a deed from their father, and that the father is dead, a prima facie case is made out.

3. When, in a case of the character above indicated, the deed from the father is produced by the defendant under notice, the presumption arises that the defendant claims under the deed until the contrary appears. This presumption may be overcome by evidence showing that the defendant claims also under another and independent source of title.

Argued June 8,—Decided August 13, 1906.

Complaint for land. Before Judge Hammond. Burke superior court. August 18, 1905.

Henry Q. Bell and others brought an action to recover a described parcel of land, against John Sherman. The abstract of title attached to the petition was as follows: "1st. Possession and title in Simeon Bell Sr. 2nd. Deed dated February 4th, 1867, executed by Simeon Bell Sr., reserving life-estate to grantor and conveying life-estate to Seaborn J. Bell with remainder in fee simple to such child or children or child's child as he shall leave surviving him at his death; the land conveyed being 500 acres, ad-

joining lands of A. Robinson, Simeon Reeves, and others, on the waters of Luke's branch. 3rd. Death of Simeon Bell Sr., first life-tenant. 4th. Death of Seaborn J. Bell, second life-tenant. 5th. Petitioners are the only surviving children of Seaborn J. Bell at the time of his death; there being no grandchildren whose parents had deceased." A copy of the petition and process was served on Mrs. Brinkley and her children as the true claimants. Sherman answered alleging that he was merely a tenant of Mrs. Brinkley, and had no further interest in the matter. Mrs. Brink- . ley filed an answer in which she denied that the plaintiffs had title to the premises, and admitted that Sherman was in possession as her tenant. She alleged that her deceased husband obtained the land by conveyance from Pope, who held a chain of title to the same which originated in a conveyance from James T. Bothwell to Eliel Lockhart, and that each grantor in this chain had warranted the title. The several grantors in the chain of title were vouched in as parties defendant to defend the title of Mrs. Brinkley. It did not appear from the answer from whom Bothwell derived title. At the trial the plaintiff introduced a deed dated February 4, 1867, embracing the premises in dispute, which were referred to as the place where Seaborn J. Bell then lived, in which Simeon Bell was the grantor. The deed recited that the consideration was $10 and the natural love and affection which the grantor bore to his son, Seaborn J. Bell. Under the terms of the deed a life-estate was reserved to the grantor, and an estate for life was granted to Seaborn J. Bell, and after his death the property was to go in fee simple to such "child or children or children's child" of Seaborn J. Bell as he may leave surviving him. In the event Seaborn J. Bell died leaving "no child or child's child surviving him," the property was to revert to the estate of Simeon Bell. The plaintiff also introduced in evidence a deed which had been produced by defendant under notice, dated August 12, 1873, from Seaborn J. Bell and his wife to James T. Bothwell, embracing the premises in dispute. The deed recited that the land conveyed was a part of the land assigned to Seaborn J. Bell as a homestead. Attached to the deed was a paper signed by the ordinary, confirming the sale by Bell and his wife to Bothwell, and reciting that the consideration named in the deed consisted of outstanding judgments and mortgages prior to the first of January, 1868, to which the land was subject and

liable. There was evidence that the plaintiffs were the children of Seaborn J. Bell. It also appeared that the deed under which the plaintiffs claimed was found among the papers of S. J. Bell after his death. It seems from the evidence that the property in dispute was once in the possession of James H. Royal, and about 1857 Royal removed from the place, and Seaborn J. Bell went into possession. He was in possession at the beginning of the Civil War. He went into the army, leaving his family upon the place, and his father, Simeon Bell, exercised a general supervision over the property until S. J. Bell returned from the army. There is nothing in the record to indicate how the property passed from Royal to S. J. Bell, it simply appearing that Royal removed from the premises at the instance of Simeon Bell, who placed his son Seaborn in possession. It is not claimed that Simeon Bell acquired title to the property by prescription, and the evidence hardly establishes that he was ever in possession at all. Such apparent acts of ownership as he exercised from time to time were subject to the possession of Seaborn J. Bell and his family. The defendant introduced no testimony. The jury, under the charge of the court, returned a verdict for the defendant. The plaintiff made a motion for a new trial, which was granted, and the defendant excepted.

*Johnston & Fullbright, Lamar & Callaway,* and *W. R. Callaway,* for plaintiffs in error. *Brinson & Davis,* contra.

COBB, P. J. (After stating the foregoing facts.)

The rule of the common law, that where both parties in ejectment derive title from a common source, the plaintiff is not required to show title in such person, has been often recognized by this court as being applicable to an action for the recovery of land brought under the common-law form as well as such an action brought under the code. See cases cited in 4 Michie's Enc. Dig. 77. If the plaintiff claims as a remainderman under a deed creating a life-estate in one person and a remainder to him, and the defendant claims under a conveyance from the life-tenant, the parties derive whatever title they have from a common grantor, that is the grantor in the deed creating the life-estate and the remainder. *Brundage* v. *Bivens,* 105 *Ga.* 805. If it appears either from the plaintiff's petition or from the defendant's answer that each party claims under a common source, this of course is sufficient to make the rule applicable to the case. It is contended that the rule has no appli-

cation to the present case, for the reason that the fact that the parties claim under a common source does not appear from the pleadings but only from the evidence. We have found no distinct ruling that when this fact appears from the evidence only, the rule is applicable; but it has been the almost uniform practice to apply the rule in such case, and we know of no decision holding that the rule is applicable only where the fact of common source of title appears from the pleadings. If the common-law form of ejectment is followed, all that is required in the pleading is a petition showing the usual allegations of lease, entry, and ouster, and an answer denying these allegations. If suit is brought under the code, the abstract of title must set forth the title relied on for recovery, and the abstract of each conveyance is to be treated in the nature of a demise laid by the plaintiff. If in the present case the plaintiffs had brought their action laying the demises in their own names and in the name of Simeon Bell or his legal representatives, this would have been sufficient to authorize evidence of a common source of title, in order to make out a prima facie case. As the abstract of title attached to the petition shows that they derive title through Simeon Bell, we see no reason why this would not be sufficient to authorize any evidence to show that the title in Simeon Bell was a sufficient foundation for a recovery by them. The deed from Seaborn J. Bell to Bothwell came from the custody of the defendant, and this would raise an inference that the defendant claimed under that conveyance. This inference would remain until the contrary appeared. As long as it remained the plaintiffs would stand as having made out a prima facie case for recovery. Of course we do not mean to hold that the defendant is bound to claim under a deed simply because he has possession of it. He may rely upon two sources of title. But when a deed comes from his custody and is admitted in evidence against him, the burden is cast to show better title than the deed conveys, if his title under the deed is not sufficient to meet the case made by the plaintiff, unless, as appears to have been held in one case, the defendant expressly denies that he claims under the deed. In *McConnell* v. *Cherokee Mining Co.*, 114 *Ga.* 84 (the case referred to), the original record shows that the defendant produced the deed, but insisted that he did not claim under it, asserting that he derived title from a source independent of and distinct from

that under which the plaintiff claimed. In the present case there was no denial by the defendants that they claimed under the Bothwell deed. On the contrary the plea distinctly set up that they did, and heirs of Bothwell were vouched in to defend.

We think the court properly granted a new trial. On another trial the defendant may introduce evidence of any title that she has acquired to the premises either through S. J. Bell or otherwise. If the land originally belonged to Simeon Bell, the exclusive possession by S. J. Bell for seven years without the payment of rent would create the presumption of a gift, and convey title to him, unless there was evidence of a loan, or a claim of dominion acknowledged by S. J. Bell, or a disclaimer of title by him. Civil Code, § 3571. If such exclusive possession had been completed before the execution of the deed of 1867, Simeon Bell would have been at that time without title to the property. The evidence in the present case was not sufficient to show title in Simeon Bell, or to raise a presumption of a gift from him. But all these facts may be inquired into on another trial. The extent of our ruling now is simply that the deed from S. J. Bell to Bothwell, coming from the custody of the defendant, was sufficient to make out a prima facie case in the plaintiffs, and to put the defendant on proof of her title.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*